UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
OMAR BHUTTA,

                Plaintiff,

        -against-

VANCHOC TRANSPORT INC.,
d/b/a VTI TRANSPORT,

                Defendant.
------------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**

15-CV-3333 (LDH) (RML)

LaSHANN DeARCY HALL, United States District Judge:

       Plaintiff Omar Bhutta brings the instant action against Defendant Vanchoc Transport, Inc. ("Vanchoc") for willful violation of the Fair and Accurate Credit Transactions Act ("FACTA"). Defendant moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment.[1]

## UNDISPUTED FACTS[2]

       On February 9, 2015, Plaintiff rented from Defendant a Mercedes Sprinter van for one day at a cost of $272.19. (Pl.'s 56.1 Statement Resp. ¶ 1, ECF No. 29.) Plaintiff used an American Express credit card to pay for the rental. (*Id*. ¶ 3.) Vanchoc used Intuit QuickBooks Payments, an independent secure online payment service, to process Plaintiff's credit card. (*Id*. ¶ 4.) Vanchoc contends, and Plaintiff disputes, that Vanchoc also used Intuit QuickBooks Payments to simultaneously email to Plaintiff a receipt of the transaction, which truncated

---

[1] During a pre-motion conference held on May 11, 2017, regarding Defendant's anticipated motion for summary judgment, the parties agreed to have the Court consider Defendant's motion fully briefed based upon the parties' pre-motion submissions, including their pre-motion conference letters, respective Rule 56.1 Statements, and the exhibits annexed thereto. (Min. Entry, May 11, 2017.)
[2] The following facts are undisputed unless otherwise noted.

1

Plaintiff's credit card information and did not include the expiration date of Plaintiff's credit card. (*Id.* ¶¶ 5-6; Def.'s Ex. C, ECF No. 28-4.) At the time Plaintiff completed his rental transaction, Vanchoc delivered to Plaintiff a rental agreement for the van, which included Plaintiff's full credit card number and expiration date. (Pl.'s 56.1 Statement Resp. ¶¶ 7-8.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movant bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325.

Once the movant meets that burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The court is to view such facts in the light most favorable to the non-movant, drawing all reasonable inferences in his or her favor. *Anderson*, 477 U.S. at 255. To survive summary judgment, the non-movant must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The

litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.").

## DISCUSSION

Congress passed FACTA in 2003 as an amendment to the Fair Credit Reporting Act ("FCRA"). *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003). Section 1681c(g)(1) of FACTA restricts the display of credit and debit card numbers by requiring that these numbers be truncated on any receipt provided to customers. 15 U.S.C. § 1681c(g)(1). Specifically, Section 1681c(g)(1) states that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." *Id.*

### I. Whether Defendant Violated FACTA

Defendant argues that it did not violate FACTA because the only "receipt" issued in Plaintiff's transaction was emailed to Plaintiff and properly truncated his credit card number in compliance with the Act's requirements. (Def.'s Mot. for Pre-Mot. Conf. ("Def.'s PMC Mot.") at 3, ECF No. 26.) There is no dispute that the emailed receipt truncated Plaintiff's credit card information. (Def.'s Ex. C.) However, this fact is of no legal consequence because FACTA does not apply to the emailed receipt.

Under FACTA, the truncation requirements apply "only to receipts that are electronically printed . . . ." 15 U.S.C. § 1681c(g)(2). That is, paper receipts provided at the point of sale. *Simonoff v. Kaplan, Inc.*, No. 10-CV-2923 (LMM), 2010 WL 4823597, at *8 (S.D.N.Y. Nov. 29, 2010) ("the majority of federal district courts, as well as the Seventh Circuit Court of Appeals, have concluded that the term 'electronically printed' covers only paper receipts"); *see also Kivo v. Blumberg Exelsior, Inc.*, 982 F. Supp. 2d 217, 223 (E.D.N.Y. 2013) (stating that "a number of

3

federal circuit and district court decisions support the idea that subsection 1681c(g)(1) presumes an in-person transaction after which a physical receipt is provided from a merchant to a customer" and finding the defendant's belief that FACTA did not apply to mailed receipt confirmations was incorrect, but not objectively unreasonable); *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 800 (7th Cir. 2010) ("[T]he overall statutory context of FACTA suggests, consistent with the ordinary meaning of the word 'print,' that the statute is aimed at paper receipts . . . that are printed and 'provided to the cardholder at the point of the sale or transaction.'") (quoting 15 U.S.C. § 1681c(g)(1)) (emphasis omitted); *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011) ("Congress was regulating only those receipts physically printed by the vendor at the point of sale or transaction; to apply the statute to receipts that are emailed to the consumer would broaden the statute's reach beyond the words that Congress actually used." (citations omitted)). Further, FACTA's use of the term "point of sale" contemplates "in-person transaction[s] after which a physical receipt is provided from a merchant to a customer." *Kivo,* 982 F. Supp. 2d at 223 (citing *Simonoff*, 643 F.3d at 1210; *Shlahtichman*, 615 F.3d at 800). Accordingly, the emailed receipt does not fall within the scope of FACTA.

Defendant's argument that the rental agreement does not fall within the ambit of FACTA is equally unavailing, as contrary to Defendant's assertion, it is indeed a receipt. Admittedly, the term "receipt" is not defined in FACTA. *See* 15 U.S.C. § 1681c. Likewise, no court in the Second Circuit has interpreted this term under the statute. Courts in other circuits have, however, interpreted the term and have applied its common meaning: "[a] written acknowledgment that something has been received." *Receipt*, Black's Law Dictionary (10th Ed. 2014). In assessing whether a given document can be deemed a receipt, these courts have looked

4

to the type of information typically incorporated in such documents, including: "the merchant, the customer, the date (and even time) of the sale, the amount of the payment received from the customer, and even the specific goods purchased." *Todd v. Target Corp.*, No. 10-CV-05598, 2012 WL 1080355, at *2 (N.D. Ill. Mar. 30, 2012) (finding that merchant copies, although not called "receipts," fit the common meaning of the term and identified the information acknowledging the transaction"); *see also Kelleher v. Eaglerider, Inc.*, No. 09 C 5772, 2010 WL 4386837, at *4 (N.D. Ill. Oct. 28, 2010), *as corrected* (Nov. 10, 2010) (finding that "Rental In" and "Rental Out" forms constituted receipts under FACTA, even though they were not called "receipts," because they contained the same information as the actual receipt and were provided to the customer when he picked up and dropped off his rental).

Here, the rental agreement contains contractual terms governing the rental of the van and the relationship between Plaintiff and Defendant. (*See generally* Def.'s Ex. A, ECF No. 28-2.) Specifically, the terms address the "Nature of Agreement/Vehicle Repairs/Warranty Disclaimer"; "Responsibility for Vehicle Condition/Return/Repossession"; "Loss of Use or Damage to Vehicle/Collision Damage Waiver"; "Prohibited Uses of Vehicle"; "Responsibility for Property in Vehicle"; "Payment of Charges"; "Computation of Charges"; "Third Party Liability Protection"; "Reporting of Accidents and Parking or Traffic Violations"; as well as "Parking and Traffic Violations." (*Id.*) Further, terms typically found in contracts, such as provisions regarding assignment or transfer of the agreement or vehicle, modification of the terms, the contract's constitution as the entire agreement, the severability of individual provisions, and the applicable law and venue of lawsuits involving the contract, are likewise included in the rental agreement. (*Id.*)

That said, the rental agreement also contains all of the indicia of a "written acknowledgment that something has been received," *i.e.* a "receipt." *See Receipt*, Black's Law Dictionary. The rental agreement identifies the merchant, Defendant Vanchoc, and the customer, Mr. Bhutta. (Def.'s Ex. A at 2.) The document specifies the date and time of the transaction, as well as the payment received, which totaled $272.19. (*Id.*) The document also details the exact model of the van Plaintiff rented. (*Id.*) Indeed, all of the information provided in the emailed receipt Defendant contends it sent to Plaintiff is also set forth in the rental agreement. (*Compare* Def.'s Ex. A *with* Def.'s Ex. C.) This information coupled with the fact that the rental agreement was provided to Plaintiff at the time of sale is sufficient to deem the agreement a receipt. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 125 (S.D.N.Y. 2011) ("A merchant may not avoid the FACTA truncation requirements simply by labeling every receipt as a 'Merchant Copy'. . . ."). Because there is no dispute that the rental agreement contained Plaintiff's full credit card information, Defendant failed to comply with FACTA's truncation requirements. (Pl.'s 56.1 Statement Resp. ¶¶ 7-8.)

## II. Whether Defendant's Violation of FACTA Was Willful

Defendant argues that even if it is found to have violated FACTA, any such violation was not willful. The Court agrees.

The Supreme Court has found that where willfulness is a statutory condition of civil liability, it "cover[s] not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). A party recklessly violates the FCRA, which includes FACTA, when the party's interpretation of the statute "[runs] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Further, a company runs an unjustifiable risk that reaches the standard of recklessness

if its conduct is "objectively unreasonable." *Id.* at 69-70 (finding that, because the defendant's belief that the FCRA did not apply to new transactions was "not objectively unreasonable," the defendant's conduct was not reckless).

In *Safeco*, the Supreme Court assessed three factors in determining whether the defendant's conduct was "objectively unreasonable": (1) whether the statute was silent on the point, (2) whether the defendant's reading of the statute had foundation in the statutory text, and (3) whether the defendant was operating without guidance from federal appellate courts or the Federal Trade Commission ("FTC"). *Id.* at 69-70.

As discussed above, the statute is silent as to the definition of the term "receipt." *See* 15 U.S.C. § 1681c. Next, Defendant's interpretation of FACTA as not applying to a rental agreement has foundation in the statutory text, as the text is arguably "less-than-pellucid." *Safeco*, 551 U.S. at 70. Because the rental agreement contained terms and provisions, which are common features of a contract but distinct from a receipt, and because FACTA applies only to receipts, Defendant's belief that the rental agreement falls outside the purview of FACTA is not without any foundation in the statutory text. (*See* Def.'s Ex. A.) That is, although the rental agreement can be deemed a "receipt," as the Court has found here, Defendant's interpretation of the statute as not applying to a rental agreement is not objectively unreasonable. *Safeco*, 551 U.S. at 70 n.20. ("Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."). Finally, during the relevant time period, Defendant was operating without any guidance from federal appellate courts or the FTC as to the definition of "receipt" under FACTA.[3] *See Long v.*

---

[3] Only a handful of district courts have endeavored to define the term "receipt" under the Act, *see Kelleher*, 2010 WL 4386837 at *4; *Todd*, 2012 WL 1080355 at *2, these definitions are not binding interpretations of the statute.

7

*Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 376-78 (3d Cir. 2012) (applying the factors in *Safeco* to find that the defendant's interpretation of "expiration date" under FACTA was "at least objectively reasonable"); *Shlahtichman*, 615 F.3d at 800 (applying *Safeco* to find that defendant's belief that FACTA did not apply to emailed receipts was objectively reasonable); *Kivo*, 982 F. Supp. 2d at 221 (applying *Safeco* and finding that defendant's interpretation of "point of sale" was not objectively unreasonable because it was "consistent with the plain meaning of the statute's text and context," "legislative history support[s] the [d]efendant's interpretation of Section 1681c(g)," and the [d]efendant's interpretation is consistent with the reasoning of a number of federal courts who reviewed this provision"). Accordingly, under the *Safeco* factors, Defendant has established that its violation of FACTA was not willful or reckless.[4] *Fuges v. Sw. Fin. Servs., Ltd.*, No. 2:09-CV-00699, 2011 WL 5865961, at *5 (E.D. Pa. Nov. 22, 2011) ("[P]ost-*Safeco* courts routinely grant summary judgment on FCRA willful violation claims if the defendant company acted objectively reasonably in the face of unclear statutory text and insufficient pertinent authoritative guidance."), *aff'd*, 707 F.3d 241 (3d Cir. 2012).

---

And, while the Seventh and Ninth Circuits have adopted the position that FACTA applies only to paper receipts as opposed to emailed receipts, neither circuit has explicitly defined the term "receipt." *Shlahtichman*, 615 F.3d at 800 (finding FACTA applied to printed receipts provided to cardholder at point of sale); *Simonoff*, 643 F.3d at 1207 (same).

[4] Defendant also argues that its violation of FACTA was not willful because Defendant partially complied with the statute in two ways. Defendant first contends that it partially complied with FACTA by properly truncating the credit card information in the emailed receipt sent to Plaintiff. (Def.'s PMC Mot. at 3.) However, whether the emailed receipt complied with FACTA is irrelevant because the emailed receipt is neither the receipt at issue, nor does it fall under the scope of FACTA as discussed above. Defendant also argues that it partially complied with the statute in that Defendant changed the Easy Rent Pro settings to properly truncate credit card information after Plaintiff notified Defendant of the potential FACTA violation. (*Id*.) This argument is also unavailing. The fact that Defendant may have subsequently complied with FACTA does not provide a viable basis for finding Defendant's violation was not willful, and Defendant points to no case law to otherwise support its argument. *Cf. Katz v. Donna Karan Int'l, Inc. v. Donna Karan Int'l, Inc.*, No. 14 CIV. 740 PAC, 2015 WL 405506, at *2 (S.D.N.Y. Jan. 30, 2015) (finding the plaintiff's FACTA claim implausible where there were allegations that the defendant partially complied with the statute by redacting the first six digits and final four digits of a credit card, which the plaintiff alleged was the violation)*, vacated and remanded sub nom. Crupar-Weinmann v. Paris Baguette Am., Inc.*, 653 F. App'x 81 (2d Cir. 2016). In any event, for the reasons stated above, Defendant's violation was not willful.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED:

<u>      /s/ LDH      </u>
LaSHANN DeARCY HALL
United States District Judge


Dated:  Brooklyn, New York
        March 29, 2018